# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**Randal C. Fritz**

    **v.**                                        Case No. 06-cv-469-PB
                                                                        Opinion No. 2007 DNH 104

**Kenneth Brown and Katharine Daly**

## MEMORANDUM AND ORDER

Randal Fritz, a former investigator for the New Hampshire Commission for Human Rights, brings this suit pursuant to 42 U.S.C. § 1983, alleging that the Commission's Chairman and Executive Director violated his First Amendment rights by retaliating against him after he engaged in speech and acts protected by the First Amendment. Defendants now move to dismiss the instant suit, arguing both that his claims fail to state viable causes of action, and that they are entitled to qualified immunity. For the reasons set forth below, I grant defendants' motion in part and deny it in part.

## I. BACKGROUND

This is Fritz's second lawsuit asserting First Amendment retaliation claims against the Commission's Chairman and Executive Director. I dismissed the first action ("Fritz I") because I determined that the statements on which his claims were based were not protected by the First Amendment. Fritz v. Daley, 2006 DNH 125. I first provide some background information on Fritz I, and then describe Fritz's current claims.

### A. Fritz I

Fritz's initial suit arose from a letter he wrote on October 4, 2005, while investigating a hostile work environment claim in his capacity as a Commission investigator. Fritz mailed the letter, entitled "Confidential and for Settlement Purposes Only," to Attorney Heather Burns, who represented the claimant. Fritz I Compl., Exhibit 2. In the letter, Fritz outlined the legal standard for proving a hostile work environment claim, and bluntly assessed in harsh language what he saw as the lack of merit in the claim. In doing so, Fritz violated the plain language of Hum 206.03 by failing to maintain a neutral position with regard to parties before the Commission at all times. See

Hum 206.03(b).  Upon receipt of this letter, Burns complained to Daly, who then discussed the matter with Fritz and informed him that he had made a mistake in writing the letter.  Fritz defended himself, stating that the record in the case supported his opinions and actions.

Things deteriorated from here as Fritz engaged in a series of communications with Daly and other superiors in which he continued to defend his actions, refused to take corrective action, and charged Daly with improper interference with his job performance, favoritism toward Burns (who worked for Daly's former law firm), and corruption.  Fritz persisted with these efforts at his disciplinary hearing, where he told his administrative superiors why he should not be disciplined and claimed that it was Daly who was acting improperly.

Fritz argued in his first lawsuit that the October 4th letter, his attempts to defend himself, and his counter accusations of corruption were all statements and acts protected by the First Amendment.  I concluded in that case that the writing of the letter and the back-and-forth communications that followed were not protected by the First Amendment under Garcetti v. Ceballos, 126 S.Ct. 1951, 1958 (2006) because Fritz made the

communications at issue pursuant to his official duties and not as a citizen on matters of public concern.  Fritz I, 2007 DNH 125 at *12-14.

## B. The Current Action

Fritz makes similar allegations in the instant suit, claiming that Daly and Brown retaliated against him in violation of the First Amendment.  He contends that the defendants committed a series of retaliatory acts against him after he engaged in protected acts and statements.  Fritz alleges that these retaliatory acts began immediately after he filed the previous lawsuit on May 22, 2006 and culminated in his termination on December 1, 2006.

### 1. Private Investigator

According to Fritz's complaint, on June 6, 2006, defendants sent a private investigator to threaten, intimidate, and deter his Attorney, Pierre Rumpf, from representing him in Fritz I. Compl. at ¶¶ 21-33.  The complaint states that the investigator did this by going to Rumpf's law office, asking him questions about Fritz, and asking other area attorneys about Rumpf and Fritz.

2. Co-Worker Relationships

Fritz also alleges that defendants poisoned his relationships with co-workers in response to his filing of Fritz I. Id. at ¶¶ 34-43. Specifically, he states that defendants schemed with one of Fritz's co-workers to manufacture phony and frivolous harassment allegations against him in August 2006. Id. According to the complaint, a co-worker sent Fritz an e-mail, copied to the commission's assistant director, in which she threatened to complain to defendants if Fritz sent her another e-mail with "attitude." Id. at ¶ 36. The complaint alleges that the co-worker's e-mail "was a charade as it was prepared with assistance from defendant Brown and/or defendant Daly." Id. at ¶ 38. Additionally, Fritz's complaint states that he was friendly with the co-worker before he filed his initial lawsuit and that the co-worker had received her annual review shortly after sending the threatening e-mail. Id. at ¶¶ 40-43.

3. Denied Access To Non-Public Commission Meeting

Next, Fritz alleges that the defendants retaliated against him for asserting his right to be present at a non-public session of a Commission meeting. Compl. at ¶¶ 44-53. On November 2, 2006, Fritz attended a regularly scheduled Commission meeting.

Id. at ¶ 44.  The agenda for the meeting included a non-public session regarding discipline of an employee.  Id.  Believing that session to be about him, Fritz sought to attend the meeting and have it opened up to the public pursuant to the state's open meeting law, N.H. Rev. Stat. Ann. § 91-A:3.  Despite his attempts to explain why he believed he could open the meeting, defendants denied him access to the meeting, called the police to remove him from the premises, and conducted the meeting as a private session.  Id. at ¶¶ 47-53.

    4.   Whistle-Blower Complaint, Notice of Contemplation of Dismissal, and Notice of Dismissal

At 8:46 a.m. on November 13, 2006, Fritz mailed a state whistle-blower complaint to the New Hampshire Department of Labor, the substance of which was similar to his initial First Amendment lawsuit.  Compl. at ¶ 54.  A few hours later, "around midday on November 13," Fritz signed a receipt for a Notice of Contemplation of Dismissal, dated November 10, 2006, which the defendants had sent by certified mail.  Pl.'s Objection Memorandum at 10; Def.'s Motion to Dismiss, Exhibit A.

The Notice states that "the Commission is considering dismissing you from employment pursuant to Per 1002.08(b)(16),

willful release of confidential information in violation of Commission Law, rules, and policy, and Per 1002.08(b)(13), persistent refusal to follow the legitimate directives of a superior."  Def.'s Motion to Dismiss, Exhibit A.  The Notice provides a list of sixteen documents, each attached to the Notice, which the Commission describes as "information which we believe would support a decision to dismiss you from employment." Id.  Included in this list is the complaint in Fritz I and its associated attachments, and the "[p]hotograph on your office wall . . . showing your display of a framed order from the U.S. District Court for the District of N.H., denying defendants' Motion to Seal the record in the matter of Fritz v. Daly et. al." Id.

   Defendants terminated Fritz following a November 28, 2006 disciplinary meeting at which Fritz presented written rebuttal but declined any discussion.  The Commission's December 1, 2006 Notice of Termination reiterates and incorporates the November 10, 2006 Notice of Contemplation of Dismissal and associated attachments.  Def.'s Motion to Dismiss, Exhibit B.

   5.   Summary

Fritz alleges that defendants violated his First Amendment rights by retaliating against him for: (1) filing the prior lawsuit and opposing motions to seal and redact portions of pleadings in the prior lawsuit, (2) displaying on his office wall a copy of this court's Order denying the motions to seal, (3) asserting a state statutory right to be present at a non-public Commission meeting, and (4) filing a whistle-blower complaint with the New Hampshire Department of Labor.

Fritz alleges that the defendants retaliated against him in response to these allegedly protected acts, by (1) sending a private investigator to intimidate him and thwart his attempt to obtain legal representation in Fritz I, (2) scheming with one of Fritz's co-workers to manufacture phony and frivolous harassment allegations against him, (3) refusing Fritz access to a non-public session of a Commission meeting, and (4) terminating his employment.

## II.   STANDARD OF REVIEW

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must "accept as true the well-pleaded factual

allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory."  Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002).  The issue is not "what the plaintiff is required ultimately to *prove* in order to prevail on her claim, but rather what she is required to *plead* in order to be permitted to develop her case for eventual adjudication on the merits."  Gorski v. N.H. Dep't of Corrs., 290 F.3d 466, 472 (1st Cir. 2002) (emphasis in original).

   I must consider the complaint, documents annexed to it, and other materials fairly incorporated within it when ruling on the motion.  Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).  Additionally, I may consider matters that are susceptible to judicial notice.  Id.  This includes matters of public record such as documents from prior court proceedings, Boaten v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000), and the "entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint."  Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000).  I may consider such extra

pleading materials without converting a motion to dismiss to one for summary judgment.  Id.

### III.  ANALYSIS

Defendants challenge Fritz's First Amendment claims by arguing that the acts and statements on which the claims are based are not protected by the First Amendment.  Alternatively, they argue that they are entitled to qualified immunity.

To survive a motion to dismiss a First Amendment retaliation claim, a public employee must allege that he faced retaliation for speaking as a citizen on a matter of public concern. Garcetti, 126 S.Ct. at 1957-60.  After satisfying this requirement, he must also allege that (1) the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently, and (2) that his protected speech was a substantial or motivating factor in the adverse action against him.  Jordan v. Carter, 428 F.3d 67, 72 (1st Cir. 2005) (describing the so-called "Pickering balancing test," derived, respectively, from the Supreme Court's decisions in Connick v. Myers, 461 U.S. 138 (1983); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977); and Pickering

v. Bd. of Educ., 391 U.S. 563 (1968)).

In cases where a plaintiff's First Amendment rights collide with the companion legal doctrine of qualified immunity, I begin with the question of whether the facts as alleged make out a violation of the First Amendment.  See Dirrane v. Brookline Police Dep't, 315 F.3d 65, 70 (1st Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001).  If I determine that no such violation occurred, I need not continue the qualified immunity analysis because plaintiff's claim fails as a matter of law and will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  See id. at 69-70.  If, however, plaintiff's complaint pleads a constitutional violation, I must then determine whether a similarly situated reasonable official would have known at the time that he had violated a clearly established right.  Saucier, 533 U.S. at 202; Pagan v. Calderon, 448 F.3d 16, 31 (1st Cir. 2006).  If the answer is yes, then the defendants are not entitled to qualified immunity.

**A.   Are Fritz's Statements And Acts Protected?**

Defendants argue that Fritz cannot satisfy the first element of his claim because he does not have a First Amendment right to protection from retaliation either for filing the complaint in

-11-

Fritz I or for opposing defendants' motion to seal in that action.[1]  This argument appears to be based on the mistaken premise that the First Amendment does not protect a government employee from retaliation for the act of filing a lawsuit unless the lawsuit asserts viable First Amendment claims.[2]

In addition to protecting speech, the First Amendment guarantees every citizen the right "to petition the Government for redress of grievances."  U.S. Const. amend. I.  The right to access the courts is an established aspect of the right to petition the government, Bill Johnson's Rest., Inc. v. NLRB, 461 U.S. 731, 741 (1983); Fabiano v. Hopkins, 352 F.3d 447, 453 (1st Cir. 2003), and "[a]n individual does not lose this right because she is employed by the government."  Boyle v. Burke, 925 F.2d 497, 505 (1st Cir. 1991) (citing Connick, 461 U.S. at 140).  A public employee's right to petition the government, however, is

---

[1]  Fritz has pleaded sufficient facts to support the remaining elements of his First Amendment claim.  Whether the evidence will ultimately support his allegations remains to be seen.

[2]  As support for this proposition, defendants cite Ruotolo v. City of New York, No. 03 Civ. 5045 (SHS), 2006 WL 2033662, * at 5 (S.D.N.Y. July 19, 2006).  To the extent that my reasoning and conclusions are inconsistent with Ruotolo, I simply find it unpersuasive.

subject to the same constitutional analysis as his right to free speech.  Wayte v. United States, 470 U.S. 598, 610 n.11 (1985).  Thus, after Garcetti, an employee's decision to file a lawsuit is protected by the First Amendment only if he was acting as a citizen when he filed the lawsuit and the lawsuit addressed a matter of public concern.  D'Angelo v. Sch. Bd. of Polk County, Fla., ___ F.3d ___, 2007 WL 2189099 *at 7-8 (11th Cir. 2007).  If both requirements are satisfied, the act of filing a lawsuit is protected by the First Amendment even if the lawsuit is later dismissed and regardless of whether the employee was acting as a citizen when he engaged in the conduct on which the lawsuit was based.

    I determined in Fritz I that Fritz did not engage in protected speech because he was speaking as an employee rather than as a citizen when he engaged in the speech for which he was seeking First Amendment protection.  Here, the situation is quite different.  Fritz did not file his lawsuit as part of his job.  Moreover, although Fritz sought to vindicate his employment rights by filing the lawsuit, he was not acting pursuant to his official duties, nor was he exploiting his employment position in doing so.  Rather, Fritz asserted his protected constitutional

right as a citizen to petition the government for redress of a grievance.

Furthermore, although Fritz's grievance addressed a combination of both public and private matters, it plainly included substantial allegations of favoritism, improper *ex parte* communications, unconstitutional discipline, and corruption among his superiors at the Human Rights Commission.  These allegations were not strictly limited to a personal dispute.  Rather, they "directly implicated a topic of inherent concern to the community -- official misconduct by . . . [a public] official.  O'Connor v. Steeves, 994 F.2d 905, 915 (1st Cir. 1993). Accordingly, Fritz's current lawsuit pleads sufficient facts to support his assertion that he was acting as a citizen on a matter of public concern when he filed Fritz I.[3]

2.   Displaying Court Order On Government Office Wall

Defendants next argue that Fritz's act of displaying on his government office wall a court order denying a motion to seal is

---

[3] In light of my conclusion that the filing of the first lawsuit was a protected act because Fritz filed it as a citizen on matters of public concern, I also conclude that his objections to motions to seal in that case are protected acts because they were merely actions taken pursuant to the underlying action.

not a protected act, but rather "an act of childish defiance intended purely to escalate plaintiff's personal dispute with his supervisors."  Def.'s Memorandum at 8.  Fritz contends that it was a protected speech act because "members of the public were able to see and observe the document."  Pl.'s Objection Memorandum at 11.  I disagree.

It is apparent from the complaint that Fritz was speaking as an employee rather than a citizen when he posted the court order.  At the time, Fritz was engaged in a struggle with his employers over the nature of his job responsibilities.  The posting of the court order was yet another act that Fritz undertook to support his view that his employers were improperly attempting to prevent him from doing his job.  Thus, it was a communication that Fritz undertook as an employee rather than a citizen and it is not entitled to First Amendment protection.

Fritz's contention that members of the public could see the posted order does nothing to save him.  Unlike speech made as a citizen, such as posting a statement on the exterior of one's home, printing a letter to the editor in a newspaper criticizing government action, or filing a lawsuit alleging corruption in government office, here, Fritz was merely interacting with his

superiors and coworkers within the confines of his office.

    3.   <u>Access To Non-Public Commission Meeting</u>

Fritz also claims First Amendment protection for asserting a state statutory right to be present at a non-public commission meeting. He cites no legal authority, however, to support his contention that a government employee has a First Amendment right to gain access to a nonpublic session of an agency meeting. Although N.H. Rev. Stat. Ann. § 91-A:3 contemplates certain instances in which a public employee may cause a disciplinary meeting to be open to the public, that right is protected by the state law which creates it, <u>id.</u> at § 91-A:7, and not the First Amendment. If Fritz felt that he had a right to be present during the nonpublic session under state law, he should have sought redress in state court as provided in N.H. Rev. Stat. Ann. § 91-A:7.

    4.   <u>Filing A Whistle-Blower Complaint</u>

Even if I assume that filing a state whistle-blower claim with the New Hampshire Department of Labor is an act protected by the First Amendment, Fritz has failed to state facts sufficient to support a reasonable inference that defendants based their decision to discipline him on the filing of the whistle-blower

-16-

claim.  The relevant facts that bear on this issue are as follows:  Fritz mailed his whistle-blower complaint to the Department of Labor from the Concord Post Office on November 13, 2006, with a postmark time of 8:46 a.m.  Pl.'s Objection Memorandum at 10.  A few hours later, "around midday on November 13," Fritz received the Notice, dated November 10, 2006, which the defendants had sent by certified mail.  Id.  Fritz does not assert that he gave defendants adequate notice of his intention to file a whistle-blower complaint.  Fritz thus contends that in the few hours that passed between the 8:46 a.m. mailing of his whistle-blower complaint and his "midday" receipt of the Notice, the defendants (1) learned that he had filed the complaint, (2) prepared the Notice, and (3) mailed the Notice in a manner sufficient to (4) permit certified delivery within a matter of hours.  Even construing these facts in the light most favorable to Fritz, I simply cannot conclude that this is a reasonable inference.

**B.    Are Defendants Entitled to Qualified Immunity?**

Having concluding that Fritz has properly pleaded a violation of his First Amendment right to petition, I must next consider whether a similarly situated reasonable official would

-17-

have known at the time that he had violated a clearly established right.

The First Circuit has determined that a "public employee's right to petition the government with respect to matters of public concern has been clearly established since <u>Connick</u>." <u>Boyle</u>, 925 F.2d at 505.  Defendants nevertheless argue that they are entitled to qualified immunity because a similarly situated reasonable official would not have known that firing Fritz for disclosing a charging party's confidential information in a prior lawsuit and gross insubordination violated his First Amendment right to petition.  <u>See</u> <u>Wagner v. City of Holyoke</u>, 404 F.3d 504, 508-09 (1st Cir. 2005).

 Defendants' argument on this point turns on disputed facts. According to Fritz, the defendants' purported reasons for firing him (confidentiality and insubordination) were merely pretext, and that they actually fired him as retaliation for filing his initial lawsuit.  Construing the facts in the light most favorable to Fritz, as I must do at this stage, I conclude that a reasonable official would have known that terminating a public employee for filing a First Amendment retaliation lawsuit alleging matters of public concern violated his clearly

established right to do so.  Accordingly, the defendants are not entitled to qualified immunity based on the present record.[4]

## IV.  CONCLUSION

For the reasons stated above, defendants' motion to dismiss (Doc. No. 9) is granted in part and denied in part.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 29, 2007

cc:  Pierre Rumpf, Esq.
     Paula Werme, Esq.
     Nancy J. Smith, Esq.

---

[4] Although I rule against defendants on qualified immunity grounds today, I am willing to reexamine the issue at the summary judgment stage if the evidence does not support Fritz's allegations.