```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Randal Fritz**

   **v.**                                        Case No. 06-cv-469-PB

**Kenneth Brown and Katharine Daly**

### MEMORANDUM OF DECISION[1]

The matter before me is a motion for summary judgment filed by the defendants. In reviewing that motion, I construe the evidence in the light most favorable to the plaintiff. I will grant the motion only if, on the undisputed facts, the defendants are entitled to judgment as a matter of law.

### I.  ANALYSIS

The plaintiff has advanced a First Amendment claim. In order to establish that claim, the plaintiff must demonstrate that he was speaking as a citizen on a matter of public concern. Next, he must demonstrate that the government lacked an adequate

---

[1] I denied the defendants' motion for summary judgment during a hearing on June 17, 2009. In this Memorandum of Decision, I have consolidated my oral rulings in a single document. Except where I have indicated otherwise, I have edited my rulings only to address issues of grammar, punctuation, citation format, and style.

justification for treating him differently from other members of the general public.  Finally, he must demonstrate that the protected activity was a substantial and motivating factor in the adverse employment decision.  If all three elements of this claim are established, the defendants may defeat the claim by demonstrating that they would have taken the same action with respect to the employee regardless of whether the employee had engaged in a protected activity.  Even if the plaintiff can establish the First Amendment claim that he has made in this case, the government may nevertheless be entitled to qualified immunity, and accordingly, I am going to analyze the motion for summary judgment by addressing each element of the plaintiff's claim and then proceeding to consider whether the government has a viable qualified immunity defense.  I intend to address each element of the claim separately and then to address the qualified immunity defense.

**A.    Speech as a Citizen on a Matter of Public Concern**

The first issue that I have to address is whether the plaintiff was speaking as a citizen on a matter of public concern when he made the statements that he claims are entitled to constitutional protection.  In this case, the statements were made in a lawsuit that the plaintiff filed, and that filing is a

petition for redress of grievances that is entitled to protection under the First Amendment. As I explained in my prior ruling in Fritz II, those kinds of statements are entitled to constitutional protection under the same standard as are other statements by public employees, and therefore, those statements are subject to analysis under the Garcetti standard. See Garcetti v. Ceballos, 547 U.S. 410 (2006).

    The first element of the Garcetti standard is whether the plaintiff was speaking as a citizen on a matter of public concern. In determining whether an employee's speech addresses a matter of public concern, I must consider the content, form, and context of the statement as revealed by the record as a whole. Connick v. Myers, 461 U.S. 138, 147-48 (1983). However, "[w]here a public employee speaks out on a topic which is clearly a legitimate matter of *inherent* concern to the electorate, the court may eschew further inquiry into the employee's motives as revealed by the 'form and context' of the expression." O'Connor v. Steeves, 994 F.2d 905, 913-14, (1st Cir. 1993). "Matters of inherent concern include official malfeasance, abuse of office, and neglect of duties." Curran v. Cousins, 509 F.3d 36, 46 (1st Cir. 2007). Speech regarding internal working conditions, affecting only the speaker and co-workers, and not implicating

the ability of an employer or personnel to carry out their responsibility to the public is not speech of inherent public concern.  See Rosado-Quinones v. Toledo, 528 F.3d 1, 5 (1st Cir. 2008).  Where the speech is not clearly of inherent public concern, a court may consider whether the speech is related to the employer's broader policies.  See Davignon v. Hodgson, 524 F.3d 91, 100-03 (1st Cir. 2008).  Each instance of speech must be analyzed separately to determine whether it was protected.  See Curran, 509 F.3d at 48; Hennessy v. City of Melrose, 194 F.3d 237, 246-47 (1st Cir. 1999).

In my order on the motion to dismiss in Fritz II, I determined that Fritz had pled sufficient facts to support his assertion that he was acting as a citizen on a matter of public concern when he filed Fritz I because the lawsuit plainly included allegations that directly implicated topics of inherent concern to the community--namely, official misconduct by a public official.  I now seek to clarify my ruling on the motion to dismiss.

Each of Fritz's allegations within the Fritz I complaint must be analyzed separately.  Not all of Fritz's speech within the lawsuit is protected by the First Amendment.  Rather, only Fritz's allegations concerning favoritism, improper *ex parte*

communications, and corruption among his superiors at the Human Rights Commission address matters of inherent public concern. Unlike the plaintiff's allegations of personal animosity in Rosado-Quinones, the allegations in the Fritz I complaint implicate the ability of CHR officials to carry out their duty to the public. See 528 F.3d at 5. The remaining speech in Fritz I does not concern these matters of inherent public interest.

The October 4 letter from a CHR claimant's file, which Fritz attached as an exhibit to the Fritz I complaint, contained confidential information and fails the first prong of the Garcetti test because it was not an issue of public concern. Maintaining the confidentiality of the claimant in the underlying case by redacting any identifying information would in no way have undermined Fritz's allegation against the defendants. Drawing all reasonable inferences in favor of Fritz, certain of his speech in the Fritz I complaint was spoken as a citizen on a matter of public concern. However, the attachment of the October 4 letter and inclusion of confidential information in the Fritz I complaint was not speech made as a citizen on a matter of public concern, nor was Fritz's opposition to the motion to seal the October 4 letter. So I have clarified my prior ruling on what I believe was then a motion to dismiss in Fritz II.

B.      **Whether Defendants had an Adequate Justification**

If the facts show that Fritz's speech and acts were as a citizen involving a matter of public concern, I must next consider

> whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

Garcetti, 547 U.S. at 418 (internal citation omitted); see also Curran, 509 F.3d at 45. This evaluation is a balancing test. On one side we have the First Amendment interests of the employee, which are entitled to greater weight when the employee is acting to expose government corruption, and on the other side we have the government's legitimate interest in maintaining the effective of functioning of the CHR. See Guilloty Perez v. Pierluisi, 339 F.3d 43, 53 (1st Cir. 2003). An "employer need not show an actual adverse effect in order to terminate an employee." Curran, 509 F.3d at 49. Rather, an employer need only show that the speech in question is "speech that has some potential to affect" the public employer's operations. Id. "Significant

weight is given to the public employer's 'reasonable predictions of disruption, even when the speech involved is on a matter of public concern.'" Id. (quoting Waters v. Churchill, 511 U.S. 661, 673 (1994)).

I'm speaking now only about the October 4 letter, the attachment of it to the complaint in Fritz I and the plaintiff's effort to resist the state's attempt to have the letter sealed.[2] I have already ruled that the attachment of the October letter and the plaintiff's effort to resist sealing of that letter do not qualify as speech undertaken as a citizen on a matter of public concern. Even if, however, the attachment of the letter and efforts to resist it did qualify as speech as a citizen on a matter of public concern, the speech would not be protected by the First Amendment because the defendants had an adequate justification for imposing restrictions on the speech in order to prevent the release of confidential information. The importance of maintaining CHR's claimants' confidentiality is established by statute, rules, and policy. See N.H. Rev. Stat. Ann. § 354-A:21; see also Defs.' Exh. 13, Human Rights Commission Regulation 208.04; Defs.' Exh. 14, New Hampshire Human Rights Commission

---

[2] I have omitted the three preceding sentences from the hearing transcript because they are confusing and do not contribute to my analysis.

ethics policy; Clark v. Equal Employment Opportunity Comm'n, 42 M.S.P.R. 467, 476 (1989) ("[I]f the agency were unable to ensure that its investigative records would not be released to the public, it would have a serious impact on its ability to perform its assigned functions."). CHR could have reasonably believed that there had been an actual harmful effect of Fritz's disclosure of the October 4 letter because it disclosed confidential information. Further, Fritz's lawsuit would not have been undermined in any way had he merely attached the letter in a redacted form that hid the claimant's identity. The defendants have highlighted a clear countervailing government interest in protecting claimant confidentiality so as to ensure the smooth functioning of CHR. In this case the government's interest in maintaining confidentiality outweighs Fritz's interest in revealing the claimant's identity. Accordingly, the attachment of the October 4 letter to Fritz I and efforts to resist it being sealed do not qualify as speech protected by the First Amendment.

## C. **Improper Motivation**

The next issue I must decide is whether Fritz has produced sufficient evidence to permit a finding that his participation in the protected activity was a substantial and motivating factor

behind the adverse employment action.  See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Guilloty Perez, 339 F.3d at 55.  If Fritz makes an adequate showing on this point, the burden of persuasion shifts to the defendants who must then counter by proving by a preponderance of the evidence that the defendants would have taken the same action against Fritz "even in the absence of the protected conduct." Mt. Healthy, 429 U.S. at 287; see also Curran, 509 F.3d at 45; Guilloty Perez, 339 F.3d at 51, 56; Collins v. Nuzzo, 244 F.3d 246, 252 (1st Cir. 2001) (noting that statements by city officials expressing irritation over being sued were not sufficient to show retaliation).

   Fritz need not produce direct evidence of the defendants' motivation for terminating him or otherwise retaliating against him in order to satisfy his burden of proof and may rely on circumstantial evidence, but mere speculation that the protected activity was a motivating cause is not sufficient and Fritz must show some facts linking the adverse action to his protected activity.  See Guilloty Perez, 339 F.3d at 55-56.  "This question of motivation, though usually one for the factfinder, can be resolved by the court on a summary judgment . . . motion" in favor of the defendant if the plaintiff's evidentiary showing is

insufficient or if the evidence compels the conclusion that the plaintiff would have suffered the adverse employment action in any event for nondiscriminatory reasons.  Id. at 56.

Fritz has adduced sufficient evidence of causation to shift the burden to the defendants.  Although the defendants have taken pains to emphasize that the disclosure of confidential information through the attachments of the unredacted October 4 letter, not the allegations in Fritz I, was the cause for termination, a reasonable factfinder could find from circumstantial evidence that the allegations in Fritz I were a substantial or motivating factor in his dismissal.

The temporal proximity between the filing of Fritz I and the launch of the investigation that led to Fritz's eventual termination supports Fritz's assertion that he was retaliated against for filing his initial lawsuit.  Fritz filed the complaint in Fritz I on May 25, 2006.  Daly and Brown received the complaint on or about May 30, 2006, and at the June 1, 2006 CHR meeting the Commissioners launched the investigation of Fritz's conduct that led to his eventual termination.  Defendants note that the June 1 meeting had been previously scheduled and the investigation into Fritz's conduct dovetailed into the conclusion of the Commissioners' investigation finding at the

same meeting that Fritz's allegations against Daly were unfounded. But the timing of the decision to investigate Fritz's conduct still serves as circumstantial evidence to support Fritz's claim.

In addition, when viewing the evidence in the light most favorable to Fritz, the fact that the draft suspension with pay submitted to the state Director of Personnel on June 8, 2006 also included as item (d) the request to investigate Fritz's motives for making false allegations against Daly creates the impression that Fritz's allegations may have been a substantial and motivating factor in the alleged adverse employment action. Further, although the defendants and Patterson assert that the Fritz I complaint was discussed and reviewed only to determine whether confidential information had been improperly disclosed by Fritz in the lawsuit, the fact that the complaint was cited as evidence for Fritz's termination in the November 10 Notice of Contemplation of Dismissal and that the lawsuit was continually raised in discussions would allow a factfinder to draw the inference that Fritz's allegations may have been a substantial and motivating factor in his termination.

While the involvement of an independent advisor strengthens the defendants' case and the evidence is strong that it was other of Fritz's actions which caused his dismissal, the court cannot say that no reasonable factfinder could have concluded that there was a causal relationship between the filing of <u>Fritz I</u> and the adverse employment actions against Fritz.  Further, even though the defendants' ostensible grounds for Fritz's discharge-- attachment of confidential documents and insubordination--are appropriate grounds for termination of an employee, it is not clear that these grounds were independent grounds and that the adverse employment actions would have been taken against Fritz regardless of his allegations of corruption and malfeasance in <u>Fritz I</u>.  I conclude that there is a genuine factual dispute regarding whether Fritz's allegations of corruption and malfeasance in <u>Fritz I</u> were a substantial and motivating factor in the adverse employment action taken against Fritz, and a jury would not be compelled to find that Fritz would have suffered the adverse employment action in any event for nondiscriminatory reasons.  Accordingly, I deny defendants' motion for summary judgment on this issue.

**D.   Qualified Immunity**

The last issue that I address is the question of qualified immunity.  Qualified immunity is intended to shield public officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  Anderson v. Creighton, 483 U.S. 635, 638 (1987).  In cases where a plaintiff's First Amendment rights collide with the legal doctrine of qualified immunity, proper analysis begins with the question of whether the plaintiff's allegations set forth a violation of the First Amendment.  See Fabiano v. Hopkins, 352 F.3d 444, 453 (1st Cir. 2003).  If a First Amendment violation has been established, the court must then consider whether the constitutional right at issue was clearly established at the time of the putative violation.  Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004).  Finally, the court must consider  "whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue."  Id.

Defendants argue that they are entitled to qualified immunity because there has been no constitutional violation.  According to Fritz, however, the defendants' purported reasons

for firing him -- confidentiality and insubordination -- were merely pretext, and they actually fired him as retaliation for filing his initial lawsuit.  If true, Fritz's allegations establish a constitutional violation.  The First Circuit has determined that a "public employee's right to petition the government with respect to matters of public concern has been clearly established since Connick."  Boyle v. Burke, 925 F.2d 497, 505 (1st Cir. 1991).  Thus, I conclude that a reasonable official would have known that terminating a public employee for filing a First Amendment retaliation law suit alleging matters of public concern violated his clearly established right to do so.

   Defendants also argue that they are entitled to qualified immunity because a similarly situated reasonable official would not have known that firing Fritz for disclosing a charging party's confidential information in a prior lawsuit and gross insubordination violated his First Amendment right to petition. See Wagner v. City of Holyoke, 404 F.3d 504, 508-09 (1st Cir. 2005).  The defendants cite Philip v. Cronin, 537 F.3d 26 (1st Cir. 2008), in which the First Circuit held in a public employee First Amendment case that, even if a constitutional right is clearly established, the defendant was entitled to qualified

immunity because he could have reasonably believed, even if mistaken, that his conduct did not violate the First Amendment. In <u>Cronin</u>, the evidence was that the employee had been terminated as a result of a group decision, and the First Circuit determined that one could reasonably believe that this collective decision did not violate the plaintiff's First Amendment rights.[3]

    The case law that the defendants cite is difficult to reconcile with other First Circuit case law on the subject of qualified immunity.  Despite the general rule that the subjective intent of government actors plays no part in qualified immunity analysis, in the context of employment cases involving the First Amendment right to be free from political discrimination, the First Circuit has determined that, where an officer's subjective motivation is an essential element of the constitutional violation itself, it cannot be divorced from the qualified immunity inquiry.  See <u>Martinez-Velez v. Rey-Hernandez</u>, 506 F.3d 32, 46 (1st Cir. 2007) (noting that in political discrimination cases where wrongful motive is an element of the claim, the case

---

[3] I have omitted the last several sentence of this paragraph as they appear in the hearing transcript because they are redundant.

law has regularly rejected the objective-reasonableness argument in the qualified immunity context); Rivera-Torres v. Ortiz Velez, 341 F.3d 86 (1st Cir. 2003) (holding that an employee's First Amendment right to be free from political discrimination is violated when the employer's adverse employment decision is motivated by the employee's political speech, and thus, the officer's subjective motive cannot be divorced from the qualified immunity inquiry in a political discrimination case).

In the present case, whether Fritz's speech was a substantial and motivating factor in his termination is an essential element of his claim that his First Amendment rights were violated. Accordingly, the defendants' subjective motives should likely be considered when determining whether the defendants should be granted qualified immunity. Because a factual question remains regarding whether Fritz's protected speech was a motivating factor in the decision to terminate him, immunity cannot be awarded, and I deny summary judgment to the defendants on this ground. In doing so, I acknowledge that it is possible to interpret Cronin to stand for the broad principle that where a decision to terminate a public employee is a group decision, and a reasonable person could have understood the

decision to be lawful as made by the group, individual decision makers who are sued are entitled to qualified immunity even if the evidence is overwhelming that they acted with a subjective intent to terminate for an improper purpose.  Such a holding would be a clear extension of Cronin.  I can't discern from the opinion, however, whether the extension is warranted or not.  It is also possible that Cronin may have some other interpretation that I have just misunderstood.  I have great respect for the First Circuit and am trying to faithfully follow its precedents. In this case, because of the relatively recent and substantial body of case law suggesting that constitutional violations requiring proof of subjective intent such as this one should not be analyzed ordinarily using the objective formulation of qualified immunity, and because I cannot discern the limiting principle in Cronin with sufficient clarity to reliably understand the decision, I have ruled that qualified immunity should not be awarded to the defendants in this case.

   I recognize, however, that it is possible that I have misinterpreted Cronin, and it is possible that based on undisputed facts, the defendants could be entitled to qualified immunity here.  In my judgment, the undisputed facts construed in

the light most favorable to the nonmoving party would permit a conclusion on the part of a reasonable decision maker that this decision was being made for an entirely lawful reason.  Where I disagree with the defendants is that I think that the underlying facts also permit a conclusion that protected speech was a motivating factor in the decision to terminate, and the plaintiff has just enough evidence to allow a reasonable juror to conclude that the defendants cannot prove by a preponderance of the evidence that they would have taken the same action in any event.  In my view, under these circumstances based on the interpretation I've given to Cronin and the other body of First Circuit case law that addresses this issue, I do not believe that it is appropriate to grant qualified immunity.  But I invite the defendants to appeal.  I recognize that I may be mistaken in my interpretation, and it is entirely possible based on undisputed facts that the defendants may be entitled to qualified immunity here, and if so, I would of course faithfully apply any guidance I get from the circuit.

## II. CONCLUSION

I deny the motion for summary judgment (Doc. No. 98) for the

reasons I've stated.  To the extent that the defendants have sought to reactivate the motion to strike (Doc No. 56), I determine that motion is moot because I have not relied on any of the materials that the defendants are seeking to strike in reaching this decision.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

June 18, 2009

cc:   Pierre Rumpf, Esq.
      Paula Werme, Esq.
      Nancy J. Smith, Esq.